## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## EVANSVILLE DIVISION

| | |
|---|---|
| **Donald Nichelson**, | |
| Plaintiff, | |
| v. | Cause No. 1:23-cv-834-RLY-TAB |
| **LEXINGTON REGIONAL HEALTH CENTER**, and **Leslie Marsh**, | |
| Defendants. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS OR TO TRANSFER

Because (1) the Court has specific personal jurisdiction over Defendants, (2) this Court is the most convenient forum to resolve Mr. Nichelson's Indiana-based claims, and (3) Mr. Nichelson properly pleaded claims for relief, the Court should deny *Defendants' Motion to Dismiss and Alternative Motion to Transfer* [Dkt. 13].

Respectfully submitted,

*/s/ Benjamin C. Ellis*
Benjamin C. Ellis
HKM EMPLOYMENT ATTORNEYS LLP
320 N. Meridian St., Ste. 615
Indianapolis, IN 46204
P/F  |  (317) 824-9747
Email  |  bellis@hkm.com

## 1.  Introduction

Defendants have engaged in a campaign of defamation against Mr. Nichelson, both in Nebraska and directed into Indiana. They have defamed Mr. Nichelson to the FBI, triggering an Indiana criminal investigation. They also defamed him to prospective employers in Indiana, denying him employment in the state. This Indiana-based activity both subjects Defendants to this Court's specific personal jurisdiction and makes it the most venue for adjudicating Mr. Nichelson's claims.

These Indiana connections also subject Defendants to Indiana's substantive tort law. As a result, Defendants' arguments as to timing and notice under Nebraska law are irrelevant to Mr. Nichelson's tort claims. Indiana law likewise defeats Defendants' argument that their false report to the FBI cannot form the basis of his IIED claim.

As for Mr. Nichelson's FMLA claim, it easily survives under Indiana's "any set of circumstances" pleading standard. It likewise survives under the federal 'plausibility' standard because he both pleaded that Defendants terminated his employment in retaliation for taking FMLA-protected leave, and that they treated his peers more favorably. Contrary to Defendants' claim, he did not claim that he was fired for compromising Ms. Marsh's iCloud account; he alleges that he was blamed for doing so without any basis in fact.

Accordingly, the Court should deny *Defendants' Motion to Dismiss and*

*Alternative Motion to Transfer* [Dkt. 13].

## 2.   Factual Background

Mr. Nichelson worked for LRHC as a Network Administrator from June 6, 2014 until the termination of his employment on April 7, 2021. [Dkt. 1-1 at 2 ¶ 6]. Mr. Nichelson initially worked for LRHC from Nebraska, but moved to Evansville, Indiana on August 22, 2019. (Ex. 1, Nichelson Decl. ¶¶ 2 to 3.) With LRHC's knowledge and consent, he continued to work for LRHC remotely from Indiana until his employment was terminated. (Ex. 1, Nichelson Decl. ¶¶ 3, 4.) While working remotely, Mr. Nichelson received physical mail from LRHC, including work-related equipment and documents relating to his taxes and employment benefits. (Ex. 1, Nichelson Decl. ¶ 5.)

In the fall of 2020, Leslie Marsh's (LRHC's CEO) iCloud account was compromised. [Dkt. 1-1 at 2 ¶ 7]. In or around October 2020, Rich Hoffman was hired to investigate. [Dkt. 1-1 at 3 ¶ 8]. Although no evidence linked Mr. Nichelson to Marsh's iCloud account being compromised, Marsh blamed him for doing so. [Dkt. 1-1 at 3 ¶ 9].

On or about January 13, 2021, Rob Hanna (CIO), along with Jill Denker (HR Director) and Tara Naprstek (Director of Finance), called Mr. Nichelson and placed him on an unofficial / temporary suspension pending the outcome of the TNT CYBER SOLUTIONS's investigation. [Dkt. 1-1 at 3 ¶ 10]. On or about January 19, 2021, Mr. Nichelson was

officially suspended in a call with Hanna, Jill Denker (HR Director), and Tara Naprstek (Director of Finance). [Dkt. 1-1 at 3 ¶ 12].

Following therapy with Kimberly Ermi, Mr. Nichelson requested medical leave on or about February 1, 2021. [Dkt. 1-1 at 3 ¶ 14]. On or about March 10, 2021, Ermi recommended that Mr. Nichelson's FMLA leave be extended through April 26, 2021. [Dkt. 1-1 at 4 ¶ 19]. Denker approved this extension of Mr. Nichelson's FMLA leave. [Dkt. 1-1 at 4 ¶ 20].

On or about April 7, 2021, Denker and Naprstek left a voicemail for Mr. Nichelson requesting a call back. [Dkt. 1-1 at 4 ¶ 21]. When Mr. Nichelson called back, Denker and Amy Schroeder (Chief Strategy Officer) told him his employment was terminated effective April 7, 2021. [Dkt. 1-1 at 4 ¶ 22].

LRHC had suspended its entire IT department on February 3, 2021. [Dkt. 1-1 at 3 ¶¶ 15, 16]. At least two of those employees were returned to work by February 9, 2021. [Dkt. 1-1 at 3 ¶¶ 17-18].

Subsequently, Mr. Nichelson learned that Marsh had been telling other LRHC employees that he was involved in a large-scale effort to improperly access her accounts and to harm LRHC. [Dkt. 1-1 at 4 ¶ 23]. Marsh told LRHC that various law enforcement agencies – including the FBI – were investigating Mr. Nichelson. [Dkt. 1-1 at 4 ¶ 24]. Mr. Nichelson did not engage in any unauthorized activity relating to any of Marsh's accounts. [Dkt. 1-1 at 4 ¶ 25]. Mr. Nichelson did not take any actions for the purpose of harming LRHC. [Dkt. 1-1 at 4 ¶ 26].

Following his termination, Mr. Nichelson had a promising in-person interview with Amy English and Sean Murray for a job with GEORGE KOCH SONS, LLC on June 16, 2021. (Ex. 1, Nichelson Decl. ¶ 8.) GEORGE KOCH SONS is located in Vanderburgh County, Indiana. (Ex. 1, Nichelson Decl. ¶ 9.) Soon after the interview, however, the tenor of GEORGE KOCH SONS's communications became chilled and he did not receive a job offer. (Ex. 1, Nichelson Decl. ¶ 11.) Based on Marsh's lack of discretion in other recorded conversations, Mr. Nichelson believes that LRHC or Marsh accused him of misconduct in response to an employment verification inquiry. (Ex. 1, Nichelson Decl. ¶¶ 12 to 14.)

On December 21, 2021, FBI Special Agents Ashley Paz and Brooks came to Mr. Nichelson's worksite with PINNACLE COMPUTER SERVICES in Vanderburgh County, Indiana. (Ex. 1, Nichelson Decl. ¶ 15.) Special Agents Paz and Brooks interviewed Mr. Nichelson for approximately two hours about Marsh's allegations – at work, during business hours. (Ex. 1, Nichelson Decl. ¶ 16.) Both Special Agents Paz and Brooks are based out of FBI field offices in Indiana.

On or about October 22, 2022, Mr. Nichelson received an email from APPLE informing him that the FBI had subpoenaed information relating to his account. [Dkt. 1-1 at 4 ¶ 27]. Then, in February 2023, after Mr. Nichelson filed this lawsuit, Special Agent Maat Saad of the FBI's Cybersecurity Division contacted him about Marsh's allegations. (Ex. 1, Nichelson Decl. ¶ 20.)

Based on Mr. Nichelson's conversations with Special Agents Paz, Brooks, and Saad, it is his understanding that he is the only LRHC employee Marsh accused of hacking her or LRHC. (Ex. 1, Nichelson Decl. ¶ 21.)

Because Mr. Nichelson resides in Vanderburgh County, prosecuting this lawsuit in the Southern District of Indiana does not pose a hardship for him. (Ex. 1, Nichelson Decl. ¶ 24.) Prosecuting his claims in Nebraska, however, would be a hardship. (Ex. 1, Nichelson Decl. ¶ 25.) This is because of the cost of travel and lodgings, and a lack of sufficient time off from work. (Ex. 1, Nichelson Decl. ¶ 25.)

## 3.   Legal Standard

### 3.1.  Dismissal for lack of personal jurisdiction – Rule 12(b)(2)

"At this stage of the litigation, where the court rules on a motion to dismiss based on written materials without holding an evidentiary hearing, the plaintiff bears the burden of making a prime facie case for personal jurisdiction." *Annie Oakley Enterp. Inc. v. Rise-N-Shine LLC*, 2021 WL 2915352, at *1 (S.D. Ind., Mar. 23, 2021) (Young, J.) (citing *N. Grain Mktg., LLC v. Greving*, 743 F.3d 491 (7th Cir. 2014)). "The court may consider affidavits regarding personal jurisdiction, and the court will accept as true any facts contained in the affidavits that do not conflict with anything in the record." *Id*. (citing *Curry v. Revolution Lab'ys, LLC* 949 F.3d 385 (7th Cir. 2020)). "The court resolves all factual disputes in the

plaintiff's favor." *Id*. (citing *Curry*, 949 F.3d 385).

### 3.2.   Change of venue under 28 U.S.C. § 1404(a)

"A district court may, in its discretion, transfer a civil action to any other judicial district in which the action could have been brought, provided that such transfer is "in the interest of justice" or will promote "the convenience of parties and witnesses." *CSX Transp., Inc. v. Zayo Grp., LLC*, 2022 WL 2356075, at *8 (S.D. Ind. Mar. 4, 2022) (Young, J.) (quoting 28 U.S.C. § 1404(a)). "When deciding whether to transfer a case under § 1404(a), a district court therefore must evaluate both the convenience of the parties and various public interest considerations." *Id*. (quoting *In re Ryze Claims Sols. LLC*, 968 F.3d 701, 707-08 (7th Cir. 2020)) (internal quotations omitted). "Importantly, the moving party must establish, 'by reference to particular circumstances, that the transferee forum is clearly more convenient.'" *Id*. (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986)).

### 3.3.   Dismissal for failure to state a claim – Rule 12(B)(6)

Because Mr. Nichelson's *Complaint* was filed in Indiana state court, Defendants' motion to dismiss for failure to state a claim must be assessed under Indiana's pleading standards. *See Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 (7th Cir. 2001) ("The Federal Rules make clear that they do not apply to filings in state court, even if the case is later removed to federal court.") (citing Fed. R. Civ. P. 81(c)).

Under Indiana's standard, "[a] motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Safeco Ins. Co. of Ind. v. Blue Sky Innovation Grp.*, 211 N.E.3d 564, 568 (Ind. Ct. App. 2023) (quoting *Trail v. Boys & Girls Club of N.W. Ind.*, 845 N.E.2d 130, 134 (Ind. 2006)). "A court should accept as true the facts alleged in the complaint, and should not only consider the pleadings in the light most favorable to the plaintiff, but also draw every reasonable inference in favor of the nonmoving party." *Id.* (citing *Trail*, 845 N.E.2d at 134). Furthermore, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Id* (citing *Am. Dry Cleaning & Laundry v. State*, 725 N.E.2d 96, 98 (Ind. Ct. App. 2000).

### 4.   Legal Arguments

Defendants' misconduct toward Mr. Nichelson has not been limited to the confines of Nebraska. They spread their accusations of criminal misconduct to the FBI's Indiana field offices and prospective Indiana employers. By reaching into Indiana to harm Mr. Nichelson, Defendants are subject to this Court's jurisdiction. *See Section* 4.1, *infra* at 9. The Court should also decline to transfer this lawsuit to Nebraska, under 28 U.S.C. § 1404(a), because the Indiana locus makes this Court the most convenient forum. *See Section* 4.2, *infra* at 15.

For these same reasons, Indiana is the *locus delicti* for Mr. Nichelson's tort claims and Indiana substantive law applies. *See* Section 4.3.1, *infra* at 18. Accordingly, Defendants' defenses relating to timeliness or notice under Nebraska law are inapplicable. *See* Section 4.3.2, *infra* at 20. And though Defendants' further argue that their misconduct was not "extreme and outrageous" enough to support a claim for IIED, false police reports may support such claims in Indiana. *See Section* 4.3.3, *infra* at 20.

Finally, the Court should reject Defendants' request to dismiss Mr. Nichelson's FMLA claim. Whether under Indiana or federal pleading standards, Mr. Nichelson has properly pleaded that Defendants terminated his employment because of his **fmla**-protected leave.

## 4.1.  The Court has specific jurisdiction over Defendants.

The Court has specific personal jurisdiction over Defendants because they purposefully directed their tortious misconduct into Indiana. Defendants' argument to the contrary is based on an inference to which they are not entitled – "any allegedly defamatory statements Marsh made to law enforcement or others within LRHC occurred in Nebraska and were heard exclusively in Nebraska." [Dkt. 14 at 13]. But Defendants told the FBI that Mr. Nichelson (an Indiana resident) committed a federal crime in Indiana, predictably triggering it to investigate him in Indiana. (Ex. 1, Nichelson Decl. ¶¶ 15 to 18.) They further made that accusation to his prospective employers in Indiana, predictably causing him to lose

employment opportunities in Indiana. (Ex. 1, Nichelson Decl. ¶¶ 8-12.) When tortfeasors direct harm into Indiana, as Defendants did, they become subject to the courts in this state.

### 4.1.1.   Defendants' 'purposeful direction' of conduct into Indiana drives the jurisdictional analysis.

The Court's personal jurisdiction "depends on whether the requirements of [Indiana's] long-arm statute are met and whether federal due process requirements are satisfied." *Best Chair Inc. v. Factory Direct Wholesale, LLC*, 121 F.Supp.3d 828, 835 (S.D. Ind. 2015) (Young, J.) (citing *Purdue Research Found. V. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "Because Indiana's long-arm statute expands personal jurisdiction to the full extent permitted by the Due Process Clause, the sole inquiry before the court is whether exercising personal jurisdiction over the Defendants would offend due process." *Id.* (citing *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 966-67 (Ind. 2006) (internal citations omitted). Mr. Nichelson concedes the Court lacks general personal jurisdiction over Defendants. Specific jurisdiction exists, however, because Defendants directed their misconduct into Indiana, Mr. Nichelson's injuries arise out their Indiana-related activities, and it would "comport with traditional notions of fair play and substantial justice." *Id.* at 836 (quoting *N. Grain Mktg, LLC v. Greving*, 743 F.3d, 487, 492 (7th Cir. 2014)).

Because Mr. Nichelson's "claims against the out-of-state defendant are for intentional torts, the jurisdictional inquiry focuses on whether the conduct underlying the claims was purposefully directed at the forum state. . . . to ensure that an out-of-state defendant is not required to appear based on random, fortuitous, or attenuated contacts with the forum state. *Id.* (citing *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)). This requires "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt – that is, the plaintiff would be injured – in the forum state." *Id.* (citing *Tamburo*, 601 F.3d at 703) (internal quotations omitted). Defendants do not contest that Mr. Nichelson has pleaded intentional conduct.

### 4.1.2.   Defendants' misconduct was "expressly aimed" at Indiana with the knowledge it would harm Mr. Nichelson here.

When Defendants defamed Mr. Nichelson to the FBI and to prospective employers in Indiana, they expressly aimed their misconduct into the state. This is because it was "foreseeable," rather than "entirely fortuitous," that Defendants' misconduct would directly injure Mr. Nichelson in Indiana. *See Lab Verdict, Inc. v. Lab Equip Ltd.*, 436 F.Supp.3d 1181, 1187-88 (S.D. Ind. 2020) (analyzing defamation cases involving out-of-state tortfeasors).

In *Lab Verdict*, the defendants challenged this Court's personal jurisdiction over claims stemming from "defamatory statements" posted about the plaintiffs "on Dotmed.com." *Id*. at 1184. Like the Defendants in this lawsuit, they argued that their conduct "was not expressly aimed at Indiana, focusing on the fact that the website where the comments were posted is not geographically limited or restricted to Indiana." *Id*. at 1187. *See* [Dkt. 14 at 13] ("any allegedly defamatory statements . . . occurred in Nebraska and were heard exclusively in Nebraska"). Such conduct, the *Lab Verdict* defendants argued, was like "the sending of two allegedly misleading emails to a list of subscribers that included Indiana residents and the maintenance of an interactive website," previously held not to "establish constitutionally sufficient minimum contacts with Indiana." *Id*. at 1188 (quoting *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802-03 (7th Cir. 2014)).

The *Lab Verdict* court disagreed, likening the case instead to *Tamburo* and *Calder* – where the Seventh Circuit and Supreme Court had recognized personal jurisdiction over the defendants. In *Tamburo*, the *Lab Verdict* court noted, "the plaintiff alleged that the defendants defamed him by engaging 'in a concerted campaign of blast emails and postings on their websites accusing him of stealing their data and urging dog enthusiasts to boycott his products.'" *Id*. at 1187 (quoting *Tamburo*, 601 F.3d at 697). "The Seventh Circuit found sufficient contacts to exercise personal jurisdiction over the out-of-state defendants who (1) encouraged readers

12

to boycott the plaintiff's products; and (2) published in some statements, the plaintiff's Illinois address and urged readers to contact and harass him." *Id*. (citing *Tamburo*, 601 F.3d at 706).

As for *Calder*, "the plaintiff, who lived in California, alleged that the defendants, who were headquartered in Florida, libeled her in a news article." *Id*. (citing *Calder*, 465 U.S. at 784). "The Supreme Court found sufficient contacts to exercise personal jurisdiction over the out-of-state defendants because the forum state – California – was the focal point both of the story and of the harm suffered." *Id*. (citing *Calder*, 465 U.S. at 789).

Like *Lab Verdict*, *Tamburo*, and *Calder*, Indiana is the locus of this case. After several years of working remotely from Indiana, Defendants accused Mr. Nichelson – an IT professional – of hacking them from Indiana. (Ex. 1, Nichelson Decl. ¶¶ 1 to 7.) They went beyond defaming Mr. Nichelson to Nebraska employees and law enforcement; they further spread these lies to the FBI and to prospective employers in Indiana. (Ex. 1, Nichelson Decl. ¶¶ 8 to 18.) As a result, the FBI interviewed Mr. Nichelson, during business hours, at his Indiana workplace. (Ex. 1, Nichelson Decl. ¶¶ 15, 16.) And he further lost at least one promising job opportunity with GEORGE KOCH SONS. (Ex. 1, Nichelson Decl. ¶¶ 8 to 14.) These "[r]eputation-based effects' of the defamatory [statements] connect Defendants to Indiana, not just to [Mr. Nichelson]." *Lab Verdict*, 436 F.Supp.3d at 1187 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

Because Defendants knew Mr. Nichelson resided in Indiana, they also knew that the harm from these communications would be felt in Indiana.

### 4.1.3.  Having stirred the pot in Indiana, it is both fair and just for Defendants to defend the case here.

The Nebraska-based Defendants naturally resist being held accountable in Indiana, but their inconvenience does not "offend traditional notions of fair play and substantial justice." *Tamburo*, 601 F.3d at 709 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Other than the burden on Defendants, all relevant factors favor an Indiana resolution: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Mr. Nichelson has a strong interest in prosecuting this lawsuit in Indiana. Mr. Nichelson lives in Vanderburgh County and has retained Indiana counsel. [Dkt. 1-1 at 2 ¶4]. Because this Court is within driving distance of his residence, Mr. Nichelson has the resources to participate in an Indiana lawsuit – including by appearing in person. (Ex. 1, Nichelson Decl. ¶ 14.) The federal court in Omaha, Nebraska, by contrast, is nearly 600 miles away. Prosecuting his case in such a distant forum would be a substantial hardship. (Ex. 1, Nichelson Decl. ¶ 25.)

As in *Tamburo*, Indiana also "has a strong interest in providing a forum for its residents and local business to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors." *Id*. Defendants' conduct caused an FBI investigation in Indiana – harming Mr. Nichelson and disrupting his employer's business. (Ex. 1, Nichelson Decl. ¶¶ 15 to 18.) Its communications with prospective employers not only harmed Mr. Nichelson but deprived an Indiana business of a qualified employee. (Ex. 1, Nichelson Decl. ¶¶ 8 to 13.) No other state, including Nebraska, has a substantial interest in these Indiana events.

## 4.2. Defendants should answer, in Indiana, for the misconduct they directed into Indiana.

Because Defendants have not shown that the District of Nebraska is "clearly more convenient," the Court should further deny the Defendants' alternative request for transfer under 28 U.S.C. § 1404(a). *CSX Transp. Inc.*, 2022 WL 2356075, at *8. As with Defendants' personal jurisdiction arguments, this request is based on the erroneous assertion that "Indiana has no connection to the relevant events." [Dkt. 14 at 20]. But because Indiana is the locus of Mr. Nichelson's claims, this Court is the better forum for "the convenient of the parties and various public-interest considerations." *Id*.

Because Defendants' misconduct triggered a law enforcement response and the denial of employment inside of Indiana this forum better satisfies the "parties' private interests." *Id.* (identifying factors such as "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and cost of obtaining attendance of willing, witnesses; . . . ; and all other practical problems that make trial of a case easy, expeditious and inexpensive") (quoting *Atlantic Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62 n. 6 (2013)). Witnesses to these Indiana events are likely to be found in the state, and calling on them in a Nebraska litigation would be impracticable. Because the parties themselves reside in different states, it is unavoidable that a party will be inconvenienced by the forum choice. But Defendants have evidenced the ability to effectively defend themselves in Indiana, while Mr. Nichelson lacks the resources to do so if the case were transferred. (Ex. 1, Nichelson Decl. ¶ 25.) *See also id.* ("The Court must also give some weight to the plaintiffs' choice of forum.").

The "[p]ublic-interest factors" also support an Indiana venue. *Id.* (identifying factors such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law") (quoting *Atlantic Marine*, 571 U.S. 49, 52 n. 6). Because Indiana is locus of this case, and because Indiana (rather than Nebraska) law applies to Mr. Nichelson's tort claims, *see*

Section 4.1.2, *supra* at 11, this Court is the most natural and appropriate forum for this lawsuit. Mr. Nichelson agrees with Defendants that this District Court has a busier docket than the District of Nebraska, but Defendants have not identified any "administrative difficulties" associated with a lengthier "median time interval from filing a civil case to disposition." *See* [Dkt. 14 at 23]. To the contrary, this Court is extremely efficient in handling its civil docket; its median disposition time is only approximately one month longer than the national average, despite receiving the fifth-highest number of civil filings in the country.[1]

### 4.3. Defendants should be held responsible under Indiana law.

Much of Defendants' request for dismissal under Rule 12(b)(6) turns on its misapplication of Indiana's choice-of-law doctrine to apply Nebraska's substantive law to his tort claims. *See generally* [Dkt. 14 at 24-32].[2] Because the involvement of Indiana actors is the "last event necessary" to establish liability, Indiana's *lex loci delict* analysis compels the application of Indiana substantive law. *See* Section 4.3.1, *infra* at 18. Without Nebraska law, Defendants arguments as to timeliness and notice

---

[1]   *See* Table N/A – U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (Mar. 31, 2023), available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/03/31-1 (last visited Aug. 4, 2023).

[2]   Mr. Nichelson agrees with Defendants that there is a conflict between Indiana and Nebraska law, and that Indiana's conflict-of-laws analysis applies. *See generally* [Dkt. 14 at 24-25].

fall away. *See* Section 4.3.2, *infra* at 20. And because Indiana has accepted false police reports as a potential basis for IIED claims, the Court should reject their request to dismiss that claim as well. *See* Section 4.3.3, *infra* at 20.

### 4.3.1.  Indiana law applies to Mr. Nichelson's tort claims.

As Defendants note, "Indiana law presumes that the traditional *lex loci delicti* rule – the law of the place of the wrong or tort – applies." [Dkt. 14 at 27] (citing *Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658, 662 (7th Cir. 2021)). But because "the state where the last event necessary to make an actor liable for alleged wrong" is Indiana," Indiana (and not Nebraska) law applies to Mr. Nichelson's tort claims. *Popovich v. Weingarten*, 779 F.Supp.2d 891, 896 (N.D. Ind. 2011) (quoting *Simon v. U.S.*, 805 N.E.2d 798, 805 (Ind. 2004)). Here, that last act is "a person in [Indiana] receiving [Defendants'] allegedly defamatory communication about [Mr. Nichelson]." *Id.* at 897.

In *Popovich*, Weingarten (a freelance reporter) interviewed Popovich (an Indiana resident) about his work as a "high-end 'repo man'" for a story ultimately published in SALON.COM. *Id.* at 894. When Popovich learned that Weingarten was working to sell the story to be made into a movie, he "told numerous members of the movie and television community in Los Angeles that Weingarten's Salon.com article published Popovich's confidential information and trade secrets." *Id.* at 895. Popovich then sued

Weingarten, and Weingarten countersued for defamation. *Id*. Weingarten

argued that California law applied to his defamation counterclaim

because "the last event necessary to make Popovich liable for defamation

[ ] is a person in California receiving Popovich's allegedly defamatory

communication about Weingarten." *Id*. at 897. Accordingly, even though

Popovich (the speaker) was located in Indiana, this made California the

*locus delicti*. *Id*.

The same is true in this lawsuit. Relying on extrinsic evidence,

Defendants claim "any alleged statements were made exclusively in

Nebraska and directed to LRHC employees and law enforcement in

Nebraska. [Dkt. 14 at 28] (citing Marsh's declaration). But Mr. Nichelson's

reputation was injured in Indiana when Indiana-based FBI Special

Agents Paz and Brooks interviewed him at his Indiana-workplace. (Ex. 1,

Nichelson Decl. ¶¶ 15 to 16.) He was likewise injured in Indiana when

Indiana-based GEORGE KOCH SONS denied him employment.

According, "the last event necessary to make [Defendants] liable for

defamation [ ] is a person in [Indiana] receiving [Defendants'] allegedly

defamatory communication about [Mr. Nichelson]." *Id*.

19

### 4.3.2.  Under Indiana law, Defendants' Nebraska-based timing and notice arguments are irrelevant.

Relying on Nebraska law, Defendants argue that Mr. Nichelson's tort claims should be dismissed because he failed to comply with the [POLITICAL SUBDIVISIONS TORT CLAIMS ACT], see [Dkt. 14 at 28 to 30], and Nebraska's one-year statute of limitations bars the defamation claim. *See* [Dkt. 14 at 30 to 32]. Defendants concede that the PSTCA is not applicable to them under Indiana law. *See* [Dkt. 14 at 26] ("That any claim against a political subdivision must comply with the PSTCA makes this a highly material statute that does not exist (as applicable to Nebraska) in Indiana."). Defendants likewise do not argue in their motion that Mr. Nichelson's was untimely if Indiana's two-year limitations period applies. *See* [Dkt. 14 at 26] ("Indiana's two-year statute would render that conclusion [of untimeliness] much less certain.")[3]

### 4.3.3.  Defendants' false police report to the FBI supports a claim for intentional infliction of emotional distress.

Because Indiana courts have "decline[d] to hold as a matter of law that the filing of a false [police] report can never amount to extreme or outrageous conduct," see *Williams v. Tharp*, 889 N.E.2d 870, 880 (Ind. Ct. App. 2008) *trans. granted on other grounds*, 914 N.E.2d 756 (Ind. 2009), the Court should also reject Defendants' argument that their

---

[3]   This lawsuit was filed on February 2, 2023. *See* [Dkt. 1-1 at 1] (file-mark date). Mr. Nichelson's employment was terminated on April 7, 2021. [Dkt.1-1 at 4 ¶¶ 21-22].

"alleged conduct comes nowhere close to stating a claim for intentional infliction of emotional distress." [Dkt. 14 at 30]. Because this issue is not susceptible to resolution as a matter of law, the Court should defer ruling on the issue until the factual record has been developed.

The *Williams* court explained its rationale by reference to Indiana's jurisprudence on abusive police activity and the treatment claims stemming from false police reports in other jurisdictions. *See generally* 889 N.E.2d at 880. It first noted that Indiana courts had previously recognized a claim for IIED based on "allegations police officers intentionally retaliated against [the plaintiff] and abused their power and process when they violated standard police procedure, disregarded the police chief's instructions, and conspired to intentionally and publicly humiliate him." *Id.* (citing *City of Anderson v. Weatherford*, 714 N.E.2d 181, 185 (Ind. Ct. App. 1999).

It then cited to a pair of cases from Connecticut and Georgia in which those courts had denied summary judgment on IIED claims stemming from false police reports. *Id.* It noted that a Connecticut court held that "summary judgment is inappropriate for issues involving motive, intent, and subjective feelings and reactions," and that "whether the [defendant's] conduct was extreme or outrageous was an issue for the jury." *Id.* (citing *Gilman v. Gilman*, 736 A.2d 199, 200 (Conn. Sup. Ct. 1999)). It then noted a Georgia court found that "a rational and impartial jury could conclude [the guard] relayed misleading or false information to the

investigating officer, which constituted reckless conduct of an extreme and outrageous nature and consequently caused [the plaintiff] severe emotional distress." *Id*. (quoting *Adams v. Carlisle*, 630 S.E.2d 529, 542 (Ga. Ct. App. 2006)).

Defendants' accusations against Mr. Nichelson have led to the FBI scrutinizing him for nearly two years. (Ex. 1, Nichelson Decl. ¶¶ 7, 15 to 23.) They caused the FBI to send two Special Agents to interview him at work for two hours in 2021. (Ex. 1, Nichelson Decl. ¶¶ 15, 16.) At least as of October 2022, the FBI was continuing to monitor his electronic accounts. (Ex. 1, Nichelson Decl. ¶ 19.) And a Special Agent contacted him again as recently as February 2023. (Ex. 1, Nichelson Decl. ¶ 20.) Inflicting such persistent federal law enforcement attention on Mr. Nichelson without a good faith basis goes beyond the "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities that result from living in society." [Dkt. 14 at 32] (quoting *Heitzman v. Thompson*, 705 N.W.2d 426, 431 (Neb. 2005)). They would instead cause an "an average member of the community [to] resent [Defendants] and exclaim, 'Outrageous!'" [Dkt. 14 at 32] (quoting *Heitzman*, 705 N.W.2d at 431).

### 4.4.  Mr. Nichelson has properly pleaded his FMLA claims.

Finally, the Court should deny Defendants request to deny

Mr. Nichelson's FMLA claim on plausibility grounds. *See generally* [Dkt. 14

at 34-37]. Mr. Nichelson's *Complaint* was filed in Indiana court, and is

therefore subject to Indiana's "any set of circumstances" pleading

standard. *See* Section 4.4.1, *infra* at 23. But even under *Iqbal* and *Twombly*,

Mr. Nichelson properly pleaded a plausible FMLA claim. *See* Section 4.4.2,

*infra* at 24.

#### 4.4.1.  Indiana's pleading standards only require "any set of circumstances under which a plaintiff would be entitled to relief."

The Court should apply Indiana's pleading standards because

Mr. Nichelson filed his *Complaint* in state court. *See Romo*, 250 F.3d 1119

("The Federal Rules make clear that they do not apply to filings in state

court, even if the case is later removed to federal court.") (citing

Fed. R. Civ. P. 81(c)). Under Indiana's standard, a motion to dismiss must

be denied if the allegations in the complaint establish any set of

circumstances under which a plaintiff would be entitled to relief." *Safeco*,

211 N.E.3d at 568. One such set of facts is that, as alleged, Defendants

fired Mr. Nichelson for taking FMLA-protected leave. [Dkt. 1-1 at 6 ¶36-

39].

### 4.4.2. Defendants' "plausibility" argument asks for an improper credibility determination.

Mr. Nichelson's FMLA claim also survives under federal courts's 'plausibility' standard. *See, e.g., Soares v. Meeks*, 2022 WL 189278646, at *2 (S.D. Ind. Nov. 21, 2022) (Young, J.) ("A court may only grant a 12(b)(6) motion to dismiss where the complaint lacks 'enough facts to state a claim to relief that is plausible on its face' such that the claims have not been 'nudged . . . across the line from conceivable to plausible.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In order to state a claim for retaliation under the FMLA, the plaintiff must allege facts showing that either: (1) her employer took a materially adverse action against her on account of her protected activity, such as using FMLA leave, or (2) after taking FMLA leave, her employer treated her less favorably than other similarly situated employees who did not take FMLA leave, even though she was performing her job in a satisfactory manner." *Reaves v. Maximus Inc.*, 2019 WL 13097785, at *4 (S.D. Ind. Nov. 4, 2019) (citing *Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006)).

Mr. Nichelson pleaded both sets of facts. He alleged that his employment was terminated in retaliation for his exercise of his FMLA rights. [Dkt. 1-1 at 6 ¶¶ 36-39]. He also identified potential comparators who were returned to work. *See* [Dkt. 1-1 at 6 ¶¶ 16 to 18] (identifying the suspension and reinstatement of Regina Watson and Ramona Reiber). Mr. Nichelson did not allege, as Defendants claim, "that LRHC terminated

his employment because they believed he was involved in compromising Marsh's iCloud account." [Dkt. 14 at 25]. He instead alleged that this was pretextual, that "[a]lthough [there was] no evidence linking Mr. Nichelson to Marsh's iCloud account being compromised, Marsh blamed him for doing so." [Dkt. 1-1 at 3 ¶ 9].

## 5.  Conclusion

WHEREFORE, because (1) the Court has specific personal jurisdiction over Defendants, (2) this Court is the most convenient forum to resolve Mr. Nichelson's Indiana-based claims, and (3) Mr. Nichelson properly pleaded claims for relief, the Court should deny *Defendants' Motion to Dismiss and Alternative Motion to Transfer* [Dkt. 13].